**T. D. DOWNING CO., Plaintiff,**
**v.**
**UNITED STATES, Defendant.**
**C.D. 4168; Protest No. 66/8035–19678.**

United States Customs Court,
First Division.
Jan. 29, 1971.

Walter E. Doherty, Jr., Boston, Mass., for plaintiff.

L. Patrick Gray, III, Asst. Atty. Gen. (Robert E. Burke, Trial Attorney, New York City), for defendant.

Before WATSON, MALETZ, and RAO, Judges.

RAO, Chief Judge:

The merchandise involved in this case consists of six carved-oak bas-relief panels imported from England and assessed with duty at 16⅔ per centum ad valorem under item 207.00 of the Tariff Schedules of the United States, as articles, not specially provided for, of wood. It is claimed that the panels are entitled to free entry under item 765.15, as original sculptures made in any form from any material as the professional production of sculptors.

The pertinent provisions of the Tariff Schedules are as follows:

_Classified:_

Schedule 2, Part 1, Subpart F:

_Subpart F headnote:_

1. This subpart covers all products of wood which are not provided elsewhere in the tariff schedules.

207.00  Articles not specially provided for, of wood ..... 16⅔%· ad val.

_Claimed:_

Schedule 7, Part 11, Subpart A:

_Subpart A headnotes:_

1. This subpart does not cover—

*    *    *    *    *    *    *    *    *    *

(iv) any articles of utility or for industrial use.

*    *    *    *    *    *    *    *    *    *

3. Sculptures and statuary not covered by item 765.15 are covered in other parts of the schedules on the basis of the component materials of which they are made.

*    *    *    *    *    *    *    *    *    *

765.15  Original sculptures and statuary  *  *  *,  all the foregoing made in any form from any material as the professional productions of sculptors only, whether in round or in relief, and whether cut, carved, or otherwise wrought by hand or cast ................ Free

---

At the trial Mr. Graham Carey, the importer herein, testified that he had majored in fine arts at Harvard, the class of 1914, and later after 4 years in Europe, returned to the United States and started architectural practice. His experience also included the designing and making of stained glass windows, silversmithing and jewelry work. He is a co-founder of the Catholic Art Association, is chairman of the board of advisors, and was editor of its magazine for 9 or 10 years. He was associated with the Rhode Island School of Design, where he gave a course to the faculty on the philosophy of art in the mid-thirties.

He later gave lectures to undergraduates and was an advisor in the department of sculpture. He had not studied wood sculpture formally in an educational institution.

The witness stated that he had engaged Mr. Peter Watts of Somerset, England, to carve the panels involved herein. These panels had been fitted to a pair of oak doors located in the main entrance to the Church of Christ, Sun of Justice, in Benson, Vermont. The doors were originally built by a boat builder in Newport, Rhode Island, with the panels incorporated therein. Each panel is an inch and three-quarters thick. The pan-

els were subsequently taken out of the doors and shipped to England to be carved. After the work was finished, the articles were returned as individual panels crated in a box. They were then put in place in the doors for which they were designed. Removing the panels would leave six holes in the doors so that they would cease to function properly as doors.

Mr. Carey designed the church building of which the doors were part and worked on it personally as contractor, architect, general laborer, and handyman. He said there were other carvings on the building and a statue of the Virgin and Child and stations of the cross within. The carving on the panels involved herein consists of sheep, the meaning of which was explained by the witness as follows:

The significance of the sheep on the panels is this: Christ said, "I am the door," and went on to say that he was the door of the sheepfold. This door is a symbol of Christ. It has a material function to keep out the weather and keep out people and so forth, but it also has a symbolic meaning. This is a symbol of Christ, and to signify it we put the sheep on the door to show that it is not merely a door but the door.

Mr. Carey said he had told Mr. Watts that the design should consist of sheep or rams, but left it to him to arrange them. Mr. Watts was much interested in the project and worked out a whole scheme of his own. The sheep are stylized in a similar way but they are individual animals. Photographs of the doors with the carved panels were received in evidence as Exhibit 1.

Mr. Carey testified that he knew the reputation of Mr. Watts from a study of his works, from seeing him work, and from opinions of others. In his view, Mr. Watts' ability as an artist or sculptor is first-rate. He knew that others had employed him and that Thomas Merton of Gethsemane, Kentucky, who first introduced him to this country, had a very high opinion of him. An article concerning Peter Watts and his work which Mr. Carey said he may have written which appeared in the magazine of the Catholic Art Association was received in evidence as Exhibit 4 in this case.

Mr. Carey said that at present it was unusual for an oak door to have a carving or design upon the panels. However, he knew of carved doors, such as pine wood doors in Rome carved in 300 A.D. and the famous bronze doors in several Italian cathedrals. He said there were others throughout the world and that they were recognized as pieces of fine art.

The issue before the court is whether the panels may be classified as original sculptures under item 765.15, *supra*. That provision is limited by its terms to sculptures and statuary which are the professional productions of sculptors. It is also restricted by headnote 1(iv), part 11A, schedule 7, to sculptures which are not articles of utility or for industrial use. Articles of utility have been excluded from the free entry provisions for original paintings and sculptures since the Tariff Act of 1909. In view of the restriction, it has been held that it is not enough for plaintiff to show that the articles in controversy are original sculptures made by a professional sculptor; it must also be shown that they are not articles of utility. Joseph A. Paredes & Co., a/c A. Giuntoli v. United States, 40 Cust.Ct. 471, Abstract 61618 (1958).

The panels in issue, both before being carved and subsequently, were parts of particular doors. Plaintiff's witness admitted that the doors had a utilitarian function as well as a symbolic meaning. Doors are ordinarily articles of utility. The question is whether panels, which are parts of doors, but which were taken out of the doors, carved, and then replaced, are classifiable as original sculptures, not articles of utility, within the meaning of the Tariff Schedules.

Plaintiff calls attention to United States Express Company v. United

States, 11 Treas.Dec. 32, T.D. 26987 (1906), where the court said (p. 35):

> As to the latter objection [utility], we do not think the use merely to which an article is put necessarily excludes it from classification among works of art, the fact being established that it is a work of art from the hand of an artist, as in this case. Judge Townsend says in the above case [Morris European and American Express Co. v. United States, [C.C.] 85 Fed.Rep. 964]:
>
>> If the proportions are sufficiently symmetrical, and the lines so far free from faults as to stir the emotions of people, the work is to them a work of art. Whether it is good or bad art is a mere question of quality.
>
> And, also—
>
>> The * * * contention that it can not be a work of art if adapted to a useful purpose would exclude the Ghiberti doors of Florence, or the fountains of Paris and Versailles.
>
> We might also add the bronze doors of the Capitol at Washington.

That case, which in fact did not involve doors, was decided under a paragraph and tariff act which did not contain an exclusionary clause for articles of utility and is not controlling here.

Moreover, even where the broader "works of art" paragraph which contained no restriction as to articles of utility *in haec verba* [par. 376, Tariff Act of 1913] was involved, it was held that articles made primarily to serve a useful purpose were not classifiable as sculptures or works of art. United States v. Olivotti & Co., 7 Ct.Cust.App. 46, T.D. 36309 (1916). The court in that case said (pp. 49–50):

> * * * The making of seats and chairs is strictly industrial, not sculptural, art; and when the sculptor's hand is called upon to make such conveniences artistic and beautiful, his work reaches no higher plane than the purely decorative, unless it be so com-

pelling that the utilitarian achievement of the artisan is lost in the realized sentiment of the artist. * * *

Where the utilitarian purpose is clearly subordinate or nonexistent, sculptured articles, although in the form of vases or urns, have been held classifiable as works of art. United States v. Baumgarten & Co., 2 Ct.Cust.App. 321, T.D. 32052 (1911); Samuel Shapiro & Company, Inc. v. United States, 31 Cust.Ct. 181, C.D. 1566 (1953). In the case first cited, the court said (2 Cust.Ct.App. pp. 323–324):

> * * * The form of a vase indeed has been used from ancient times as a medium for the finest artistic productions, and in many such works the utilitarian character of the article is wholly lost in its artistic character. In the case at bar the form of a vase has been used by the artist merely as a support for the real work of the piece, and the importation is indeed doubly removed from utilitarian character by reason of the fact that it is a copy of an article which is preserved in a famous collection as a work of art of classical merit.

In the *Shapiro* case, the sculpture was in the form of an urn, but was a solid block of marble and could not contain anything. The court held that the form was merely background for the artistic work and that the article had no utilitarian purpose.

In Pitt & Scott v. United States, 18 C.C.P.A. 326, T.D. 44584 (1931), the court discussed the reason for the exclusionary language, stating (pp. 328–329):

> We think that the phrase "articles of utility" should be given a very liberal construction, because we believe that Congress had in mind, in providing for free entry of original paintings but excluding articles of utility, only such paintings as were designed in their creation to be used solely in such a way as to appeal to the esthetic sense in the observer of the same, and that a painting conceived and created solely for a utilitarian purpose, and which is not designed as a means in

itself of exciting the emotions of the observer, does not come within the provision of paragraph 1704, but is excluded therefrom by the phrase "articles of utility," * * *

See also Frei Art Glass Co. v. United States, 15 Ct.Cust.App. 132, T.D. 42214 (1927), where the court said (pp. 136–137):

> While it may seem incongruous to hold that things which are in fact works of art are not so in a tariff sense, the apparent reason therefor lies in the manifest intent of Congress to admit at a low rate of duty artistic works representative of the fine arts such as paintings and sculptures, and at the same time to protect the American producers of such articles as belong to the decorative and industrial arts. * * *

The question of utilitarian purpose was more recently before the court in Express Forwarding & Storage Co., Inc. v. United States, 60 Cust.Ct. 511, C.D. 3445 (1968), involving a tester or altar canopy claimed to be a sculptural work of art. The court held that it was precluded from classification as such since it was primarily utilitarian in nature, serving to protect the altar over which it was suspended from dust falling from the ceiling and fulfilling a requirement of church law that the high altar of a cathedral be surmounted by a canopy.

In a very recent case, concerning carved stone capitals for the same church as that involved herein, the Third Division of this court held that their utilitarian feature—giving support to the roof—precluded their classification under paragraph 1807(a), Tariff Act of 1930, as original sculptures, or under paragraph 1547(a), as works of art. H. W. St. John & Co. v. United States, 65 Cust.Ct., C.D. 4141 (decided December 7, 1970).

Doors were before the court in Alexander & Oviatt v. United States, 21 C. C.P.A. 97, T.D. 46410 (1933). They consisted of glass panels 7 feet 6 inches high by 3 feet wide, bearing a design of angels, said to be symbolic of the city of Los Angeles, ringing the mission bells of California. The trial court held that the articles were works of art, but also articles of utility and hence excluded from free entry under paragraph 1704 of the Tariff Act of 1922, which declared that the word "sculpture", *inter alia*, did not include any articles of utility. The appellate court affirmed, stating (p. 100):

> That the clock and chandeliers involved are primarily articles of utility, although highly ornamented and made pleasing to the eye by artistic skill, is, we think, scarcely deniable, and, although there is argument on behalf of appellants to the effect that the door and window panels are not actually used as doors and windows, but have a strictly ornamental purpose, we may not overlook the fact that the trial court, after observing them in their respective places in appellant's establishment, reached a different conclusion.

In the instant case, both the testimony and the photographs indicate that the doors have a utilitarian purpose and are not strictly ornamental. The panels are integral parts thereof, without which the doors would be incomplete and could not function properly. The fact that they are embellished does not preclude them from performing their utilitarian purpose. Thus, they do not belong to the class of free fine arts to which Congress accorded the privilege of free entry under item 765.15, *supra*, and its predecessors. In view of the authorities cited, the protest is overruled and judgment will be entered for the defendant.

WATSON and MALETZ, JJ., concur.